In the Matter of Accounting of WALTER FREDERICKS et al., as Surviving Trustees under the Will of CHARLES DIEUDONNE, Deceased.

Surrogate's Court, New York County, January 17, 1945.

*Mitchell, Capron, Marsh, Angulo & Cooney* for Walter Fredericks and another as surviving trustees, petitioners.

*John F. X. McGohey, United States Attorney (Laurence H. Axman* and *Stanley H. Lowell* of counsel), for James E. Markham, as Alien Property Custodian of the United States, respondent.

*Nathaniel L. Goldstein, Attorney-General (Corning G. McKennee* of counsel), for respondent.

*L. Hollingsworth Wood* for Edith Erlenmeyer, respondent.

*Francis X. McGowan,* special guardian of Tuergen Dopfer, an infant, and for unknown issue.

FOLEY, S. In this proceeding for the judicial settlement of the account of the surviving trustees, instructions are requested as to the disposition to be made of accumulated income in the hands of the trustees and of future trust income.

The specific questions presented are: (1) is the vesting order of the Alien Property Custodian effective to direct the payment to him of income which had accumulated in the hands of the trustees for the benefit of one of the life tenants concededly an alien enemy?

(2) On the other hand, was a letter of instruction to the trustees written by such life tenant in 1932 which authorized the payment of the income to her daughter who is a citizen and resident of the United States effective to vest title to such accumulated income in such daughter?

The will created a trust of four fifths of the testator's residuary estate for the primary benefit of his only child, Hortense Louise Erlenmeyer, a resident of Germany. The testator directed that upon the death of his daughter equal shares of the trust principal be continued in trust with secondary life estates for the benefit of each of four named granddaughters with the principal so set apart for a beneficiary payable to her upon her reaching the age of thirty years. The testator's daughter and his four grandchildren survived him. His daughter and three of the grandchildren are German nationals residing in Germany and the fourth granddaughter, Edith Erlenmeyer, is a citizen of the United States by naturalization and resides in this country.

In September, 1931, Hortense Louise Erlenmeyer, the primary life tenant, instructed the trustees to pay the trust income from September 15, 1931, until her death to her daughter, Edith Erlenmeyer. Thereafter in a letter dated April 13, 1932, she amplified her original instructions and requested the trustees, until further order in writing from her, to pay all income to Edith Erlenmeyer and to accept her receipts for such payments. On April 2, 1943, the Alien Property Custodian made his order whereby he vested all the right, title, interest and claim of any kind whatsoever of the testator's daughter, the three grandchildren residing in Germany or their issue in and to the residu-

ary trust. (Vesting Order No. 1193; 8 Federal Register 4664.)

The answer of Edith Erlenmeyer in this proceeding contends that by reason of the written instructions for payment to her given by her mother to the trustees, she is entitled to the sum of $2,844.12, representing accumulated income in the hands of the trustees on the date of the vesting order.

The Surrogate holds that the Alien Property Custodian is entitled to the accumulated income held by the trustees and that he will be entitled hereafter to so much of the income as under the provisions of the will is directed to be paid to the alien enemies named in the vesting order. The Surrogate disallows the claim of the designee of the life tenant to the accumulated income. The Alien Property Custodian acquired by virtue of the vesting order all the right, title and interest of the life tenant and the other alien beneficiaries in the trust. (Trading with the Enemy Act, §§ 5, 7; U. S. Code, tit. 50, Appendix, §§ 5, 7; First War Powers Act, 1941, § 301; U. S. Code, tit. 50, Appendix, § 616; Executive Order No. 9095, as amd.; Code of Fed. Reg., Cum. Supp., tit. 3, p. 1121; *Woodson* v. *Deutsche, etc., Vormals,* 292 U. S. 449; *Central Trust Co.* v. *Garvan,* 254 U. S. 554; *Miller* v. *Lautenburg,* 239 N. Y. 132; *Matter of Bendit,* 214 App. Div. 446; *Matter of Sielcken,* 167 Misc. 327; *Matter of Littman,* 176 Misc. 679.)

There could be no valid or effective assignment of the trust income by the life beneficiary. (Personal Property Law, § 15; *Matter of Ungrich,* 201 N. Y. 415.) As between the answering respondent and the life tenant, the latter at all times prior to the vesting order was free to revoke her instructions to the trustees and thereby become entitled to any income in the hands of the trustees at the time of such revocation. The letters of instructions to the trustees constituted merely a revocable order and the authority of the trustees to make payment thereunder could be cancelled at the wish of the income beneficiary at any time before actual payment of income had been made. (Restatement, Trusts, § 152, Comment i; Griswold on Spendthrift Trusts, § 306; *Matter of Oakley,* 116 Misc. 494, affd. 207 App. Div. 811; *Matter of Lynch,* 151 Misc. 549; *Matter of Goldman,* 142 Misc. 790.)

In *Matter of Schaefer* (112 Misc. 308) I pointed out in a somewhat similar situation arising out of the first World War that no action of the trustee or *cestui,* whereby an accumulation of income was attempted, could defeat the purpose of the Trading with the Enemy Act. Collusive assignments of the property of alien enemies were intended to be guarded against. While collu-

sion is not charged in the pending proceeding because of the making of the authorization to pay many years before the outbreak of the present war, it would nevertheless constitute a frustration of the legal rights of the officers of the Federal Government if the designee of an alien enemy was permitted to receive the accumulated income. The existence of the war effectively revoked the authority of the trustees to make payment to Edith Erlenmeyer and entitled the Alien Property Custodian under the vesting order to payment of the accumulated income in the trustees' possession.

It is conceded by the parties that the vesting order is effective as to income accruing after its effective date. Counsel for Edith Erlenmeyer contends in a memorandum that, lacking evidence as to the continued existence of the aliens, the Surrogate should direct the retention by the trustees of all income until such proof has been presented. That contention is overruled. (*Matter of Schaefer,* 112 Misc. 308, *supra; Miller* v. *Lautenburg,* 239 N. Y. 132, *supra; Matter of Bendit,* 214 App. Div. 446, *supra.*) The very lack of evidence of the death of the aliens defeats the claim of this respondent since, in the absence of proof of death, it must be presumed that such persons are living. The parties appearing herein have stipulated as to the force of those allegations in the petition which recite the existence and residence of the aliens. Insofar as the interests of any alien are involved herein, the order of the Alien Property Custodian would be effectual even if the death of such alien had occurred prior to the date of the vesting order. (*Miller* v *Schutte,* 287 F. 604, appeal dismissed *sub nom. Schutte* v. *Miller,* 263 U. S. 730.) If the deaths of those parties will be hereafter shown to have occurred before the time of the actual payment over to the Alien Property Custodian, any person, not an alien enemy, entitled by succession to the money under the terms of the will may enforce his or her demand under the procedure outlined in the Trading with the Enemy Act by claim or by action in the Federal Courts. (Trading with the Enemy Act, § 9, U. S. Code, tit. 50, Appendix, § 9.)

A further question has been raised as to the construction of the eighth article of the will in which the decedent requested the income beneficiaries of the residuary trust to pay from their shares of the income such amounts as may be necessary to care for and maintain certain cemetery plots. One of these is located in Germany and the request in respect thereof is concededly impossible of performance. The language of the testator is clearly precatory and insufficient to create a trust or to

impose a charge upon the trust income. (*Post* v. *Moore*, 181 N. Y. 15; *Matter of Hayes*, 263 N. Y. 219; *Matter of Barney*, 207 App. Div. 25, affd. 239 N. Y. 584; *Tillman* v. *Ogren*, 227 N. Y. 495; 2 Davids on New York Law of Wills, § 775.) That it was the intention of the testator that the care of the cemetery plots was to be a matter of the discretion of his beneficiaries is emphasized by the other provisions of the will. In the fourth article an explicit provision was made for the care of another particular cemetery plot in Germany and a sum was bequeathed for that sole purpose. It is apparent that the testator understood the distinction between precatory and mandatory words and employed the language of his will with full appreciation of its significance. The request attached to the gifts is not an absolute condition.

Submit decree on notice construing the will and settling the account accordingly.