# In the Matter of the Estate of JOHN B. ZABRISKIE, Deceased.

Surrogate's Court, Kings County, April 24, 1936.

*Wingate & Cullen [Edward J. McDonald of counsel], for Bernice M. Zabriskie, as administratrix (widow).*

*Emil N. Baar [John P. Hurley of counsel], special guardian for Joan Barren Zabriskie and John Barren Zabriskie, infant children of decedent.*

WINGATE, S. In January, 1927, decedent borrowed from the National City Bank the sum of $10,000, depositing certain shares of stock with the bank as collateral security. On October 23, 1929, decedent entered into an agreement with City Bank Farmers Trust Company whereby the latter agreed in consideration of the assignment to it by decedent of sixty-seven shares of the capital stock of the American Telephone and Telegraph Company and other expressed consideration, to hold such stock in trust to pay the net income therefrom to decedent during his life, and upon his death to pay over the principal of the trust to decedent's widow. By paragraph tenth of the agreement decedent expressly reserved to himself " the right and power at any time during his life, from time to time, by an instrument in writing delivered to the Trustee, to modify, alter or revoke this agreement in whole or in part." In February, 1931, the National City Bank required additional collateral of decedent whereupon decedent and City Bank Farmers Trust Company entered into an arrangement whereby the latter, as trustee, delivered to the National City Bank as such additional collateral the sixty-seven shares of American Telephone and Telegraph Company stock held by it under the aforesaid

agreement of trust. It was agreed at this time that any dividends received upon such stock while under pledge, as aforesaid, should be paid by the National City Bank to the trustee and held by it subject to the terms of the trust. Dividends were subsequently received by the creditor bank and disposed of in accordance with this agreement.

While the loan was in this situation and on October 28, 1931, decedent died intestate. No legal representative was appointed in his estate until April, 1933, when letters of administration were issued to his widow, the present accountant. In the meanwhile, however, National City Bank had required more collateral for decedent's loan. This was furnished by decedent's widow from her individual estate. A still further demand for collateral having been made, decedent's widow on June 13, 1932, satisfied decedent's obligation to the bank with her own funds, whereupon the bank released the entire collateral, restoring to City Bank Farmers Trust Company, as trustee, the sixty-seven shares of the capital stock of American Telephone and Telegraph Company. The trust of October 23, 1929, having terminated upon decedent's death, the trustee upon receipt thereof paid over to decedent's widow the American Telephone and Telegraph Company stock as constituting the corpus of the trust.

The learned referee, Walter Jeffries Carlin, has surcharged the accountant-administratrix with this stock and all dividends collected thereon from the date of decedent's death together with interest. The theory of the surcharge is that one who occupies a position of trust will not be permitted by a court of equity to deal to his own advantage with matters connected with the trust estate. The soundness of this principle and its firm foundation in precedent are indisputable. (*Carpenter* v. *Taylor*, 164 N. Y. 171; *Fulton* v. *Whitney*, 66 id. 548; *Case* v. *Carroll*, 35 id. 385; *Forbes* v. *Halsey*, 26 id. 53; *Gardner* v. *Ogden*, 22 id. 327; *Terwilliger* v. *Brown*, 44 id. 237; *Slater* v. *Slater*, 114 App. Div. 160; *Matter of Schroeder No. 1*, 113 id. 204; *Matter of Clift*, 135 Misc. 4; *Johnston* v. *Johnston*, 131 id. 323, 328.) The issue is whether it applies here.

At the time that decedent's loan was paid by his widow with her individual funds no legal representative had been appointed in the present estate nor does it appear that application had been made therefor. Thereafter ten months passed before letters of administration issued. The rule cited by the learned referee controls where a position of confidence or trust exists. None is shown to have existed here at the time the transaction in question occurred. The circumstance that decedent's widow had not actually been

appointed administratrix at the time of her payment of decedent's loan is not determinative of the present question. A confidential or fiduciary relationship might well exist despite the absence of an official appointment. Upon the record, however, no such position or relationship appears and, therefore, this theory of liability must fail.

The pledge of the American Telephone and Telegraph Company stock as outlined above constituted a modification only of the agreement of October 23, 1929. Such right of modification was expressly reserved by decedent; the intention both of decedent and of the trustee is clear; the subsequent conduct of the parties is intelligible upon no other theory. The effect of the pledge of this stock was to subject it to the risk of sale in satisfaction of decedent's personal obligation to National City Bank. This liability, however, was a secondary liability; the primary liability and obligation for the repayment of the loan remained that of decedent. To this primary obligation, decedent's administratrix succeeded, and by decedent's estate it must be borne. The primary obligor cannot in the usual case compel contribution from his surety; the administratrix could not in the present case require contribution from the trustee or from the remainderman of the trust.

The court finds that the claim of the administratrix has been proved as alleged, and it is, therefore, allowed. As thus modified, the report of the referee is confirmed.

Proceed accordingly.